UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Billy Robinson and Daryl Bolton, individually and on behalf of other persons similarly situated, | |
| *Plaintiffs*, | No. 22 CV 6451 |
| v. | Judge Lindsay C. Jenkins |
| Lake Ventures LLC, doing business as Fresh Thyme Market, | |
| *Defendant*. | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Billy Robinson and Daryl Bolton ("Plaintiffs") initiated this putative class action on behalf of themselves and a putative class, alleging that Defendant Lake Ventures LLC, doing business Fresh Thyme Market ("Defendant" or "Fresh Thyme"), violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. ("ILCS") *et seq.* [Dkt. No. 1.] Defendant has moved to dismiss [Dkt. No. 16] and to strike class allegations [Dkt. No. 18]. For the reasons stated below, the Court denies both motions and orders limited discovery on the issue of class membership, as more fully discussed below.

1

## I.  Factual Background[1]

Headquartered in Downers Grove, Illinois, Lake Ventures LLC, doing business as Fresh Thyme Market ("Defendant" or "Fresh Thyme"), owns and operates supermarkets. [Dkt. No. 1-1 at ¶¶ 1, 24.] As part of its business, Defendant owns a distribution center in Illinois. [*Id.* ¶ 2.] Plaintiffs Billy Robinson and Daryl Bolton ("Plaintiffs") work at the distribution center as warehouse workers and are employed through a staffing agency. [*Id.* ¶¶ 2, 23, 45]

Plaintiff alleges that in its distribution center, Defendant uses a "voice/speaker recognition technology" called "Vocollect" or "Talkman" that utilizes biometric information. [*Id.* ¶¶ 4, 34.] Vocollect is sold and managed by Discovery Honeywell International, Inc. ("Honeywell"). [*Id.* ¶ 4.]

According to Plaintiff, "Vocollect is a voice-enabled, voice technology system, used often in warehouses, which allows warehouse workers to engage in real-time communications with the Vocollect software." [*Id.* ¶ 34.] Plaintiff alleges that Defendant's workers, including Plaintiffs, are required by Defendant to use Vocollect to create voice templates to allow them to interact with the Defendant's warehouse technology as a means of identification. [*Id.* ¶¶ 4–5, 46.]

---

[1] For purposes of Defendant's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint and draws all reasonable inference in Plaintiffs' favor. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). The Court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Specifically, as part of Defendant's on-boarding training, workers are required to "read[] a series of voice template words repeatedly into Defendant's voice recognition software until a voiceprint[2] or template of his voice is created." [*Id.* ¶¶ 6,[3] 36–37.] That way, the software can "understand [the worker's] idiosyncratic way of speaking" and can thereafter "identify and recognize the individual worker and his voice." [*Id.* ¶¶ 6, 37.]

Plaintiff alleges that these voice templates are more than "mere[] voice recordings" because they "are influenced by both the physical structure of an operator's vocal tract and the employee's specific vocal behavioral characteristics." [*Id.* ¶ 13.] Plaintiff additionally notes that "[a]s a worker's voice changes in different environments, the software adjusts the template to account for changes in the worker's voice, thereby changing the voiceprint to further refine its ability to recognize and ability to identify the worker." [*Id.*]

After the worker creates the voice recording at training, that voice recording becomes part of that worker's individual data file, which also contains the worker's name and employee number. [*Id.* ¶¶ 8, 15, 35, 38.] Defendant stores these voice recordings in a central host computer, known as a voice console, along with the rest

---

[2]      Plaintiffs label the data output of the Vocollect system as a "voiceprint." [Dkt. No. 1 at ¶¶ 3, 5.] While the term "voiceprint" might have an industry meaning [*Id.* at 2 n.1.], it also has a legal one, *see* 740 ILCS § 14/1 (defining "[b]iometric identifier" as "a retina or iris scan, fingerprint, *voiceprint*, or scan of hand or face geometry" (emphasis added)). In this regard, the Court disregards Plaintiffs' characterization to the extent that it purports to be a conclusion of law.

[3]      Plaintiffs' complaint includes two paragraphs numbered five. [Dkt. No. 1 at ¶¶ 5–6.] For ease of reference, the Court refers to the second paragraph numbered five as paragraph six.

of their workers' individual data files. [*Id.* ¶¶ 9, 19, 38.]

When an employee reports to work, Defendant's workers can input their individual number into a wireless headset that uses the Defendant's voice recognition software. [*Id.* ¶ 10.] When a worker is sent orders through the headset, he or she can execute voice commands by "having a dialogue with the voice recognition software which responds based upon the worker's voiceprint or template." [*Id.* ¶¶ 11–12.] Vocollect does this "by breaking down and analyzing the real time version of the worker's voice, essentially breaking it into small patterns, and comparing voice with the characteristics of his voiceprint or voice template on which the voice recognition technology has been trained, thus effectively recognizing and identifying the worker." [*Id.* at ¶¶ 12, 39.] Plaintiffs allege that this use of their voice recordings constitutes a "material benefit to Defendant, because it increases overall efficiency at distribution and fulfillment centers by identifying the individual's voice patterns as they give commands." [*Id.* ¶ 14.]

Plaintiffs allege that they were required to create a voice recording through the Vocollect system as part of their employment with Defendant. [*Id.* ¶¶ 16, 46.] Despite the mandated use of Vocollect, Plaintiffs allege that they never signed a release or other consent to allow the collection or storage of their recordings. [*Id.* ¶¶ 16, 48.] They further allege that they were not informed about the purpose of this collection, for how long their voice recordings would be stored or used, if Defendant had any biometric identifier retention policy, or if and when their voice recordings would be deleted. [*Id.* ¶¶ 16–17, 47.]

## II.     Procedural Background

Alleging the above, Plaintiffs brought two claims under BIPA on behalf of themselves and other similarly situated persons. [Dkt. No. 1 at ¶¶ 51–69.] Plaintiffs originally filed this action in Illinois state court, and Defendant removed it to federal court. [*Id.*] Plaintiffs allege two BIPA violations, specifically (1) Section 15(b) for failing to inform Plaintiffs about their collection of biometric identifiers, its purpose, or length of term or to secure written releases thereof, and (2) Section 15(a) for failing to publicly provide a retention schedule or guideline for permanently destroying its workers' biometric identifiers and by failing to comply with such a policy. [Dkt. No. 1-1 at ¶¶ 58–69.] Plaintiffs seek statutory damages, injunctive relief, pre- and post-judgment interest, and attorneys' fees and costs. [*Id.* at 17–18.]

Plaintiffs seeks relief on their own behalf and on behalf following class:

All persons, within the applicable statute of limitations, who had their voiceprint or other biometric information collected, captured, received, otherwise obtained, or disclosed by Defendant in Illinois, without their consent, and/or who failed to have their voiceprint or other biometric information timely deleted.

[*Id.* ¶ 51.]

## III.     The Illinois Biometric Information Privacy Act

BIPA imposes certain restrictions on how "private entit[ies]" may collect, retain, use, disclose, and destroy "biometric identifiers" and "biometric information." 740 ILCS § 14/15. "Biometric identifier" generally means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," apart from various exclusions. *Id.* § 14/10. "Biometric information" refers to "any information, regardless

5

of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual," except for information derived from "items or procedures excluded under the definition of biometric identifiers." *Id.*

BIPA requires that, before collecting or obtaining an individual's biometric identifiers or information, a private entity must inform the individual in writing that it is collecting his data, *id.* § 14/15(b)(1); state the specific purpose of collecting or using the data, *id.* § 14/15(b)(2); and state the length of time for which it will collect, store, and use the data, *id.* The entity must also secure a signed written release before collecting biometric data. *Id.* § 14/15(b)(3). In addition, the entity must make publicly available the "retention schedule and guidelines" used for permanently destroying the biometric identifiers and information it collects.[4] *Id.* § 14/15(a).

## IV.    Motion to Dismiss

Defendant has moved to dismiss Plaintiffs' suit for failure to state a claim. [Dkt. No. 16.] To survive a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the complaint must include sufficient factual allegations to show a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, the facts in the complaint must present a claim that rises "above the speculative level." *Id.* at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"

---

[4]     BIPA further prohibits private entities from selling, leasing, trading, or otherwise profiting from a person's biometric identifier or information, 740 ILCS § 14/15(c), and prevents private entities from disclosing, redisclosing, or otherwise disseminating a person's biometric identifiers or information, subject to various exceptions, *id.* § 14/15(d). Neither requirement is at issue in this suit.

cannot by themselves satisfy Rule 8's requirement that the complaint show the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering whether the complaint demonstrates a plausible right to relief, the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In contrast, "legal conclusions and conclusory allegations" are "not entitled to this presumption of truth" and should not be considered when deciding on a motion to dismiss. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). If the Court finds, after eliminating any legal conclusions and considering only the plaintiff's factual allegations, that the complaint does not show a plausible right to relief, then the moving party's motion to dismiss should be granted. *See Iqbal*, 556 U.S. at 679.

Defendant makes three arguments in support of its motion to dismiss, including that: (1) Plaintiffs fail to allege "possession" sufficient to plead a Section 15(a) claim; (2) Plaintiffs fail to allege that Defendant took an "active step" in the collection of their biometric data; and (3) the information alleged to have been collected and stored is not a "voiceprint" under BIPA. [Dkt. Nos. 17, 42.] The Court takes each argument in turn.

### A. Plaintiffs' Section 15(a) Claim and "Possession"

Defendant argues that Plaintiffs fails to state a Section 15(a) claim because they do not sufficiently allege "possession." [Dkt. No. 17 at 4–6; Dkt. No. 42 at 2–3.]

As noted above, Section 15(a) requires private entities that "possess" biometric information to develop a publicly available written policy, establishing a retention schedule and guidelines for destroying the information. 740 ILCS § 14/15(a). BIPA does not include a definition for "possession" in the statutory text. *See generally id.* § 14/10. As such, "courts have looked to the term's 'popularly understood' or 'settled legal' meaning of exercising dominion or control." *Johnson v. NCR Corp.*, 2023 WL 1779774, at *2 (N.D. Ill. Feb. 6, 2023) (quoting *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020)); *see also Barnett v. Apple Inc.*, 2022 WL 17881712, at *6 (Ill. App. Ct. Dec. 23, 2022) ("We apply the ordinary and popular meaning of the word 'possession,' as found by our supreme court and found in a dictionary, which is to have control."). Plaintiffs admit that they do not expressly allege that Defendant "possesses" their biometric identifier; rather, Plaintiffs argue that when Defendant collected their voiceprint by requiring it in their training, that raises the reasonable inference that Defendant also possessed it within the meaning of BIPA.[5] [Dkt. No. 25 at 4.]

Accepting all the well-pled facts in Plaintiffs' complaint as true, the Court agrees with Plaintiffs and concludes that they have adequately pled a Section 15(a) claim under Rule Eight. Plaintiffs allege that Defendant uses the Vocollect system to

---

[5] Plaintiffs additionally argue that Defendants may not attack their Section 15(a) claim separately because they do not delineate their Section 15(a) and Section 15(b) claim in separate counts. [Dkt. No. 25 at 3.] This is incorrect as a matter of law. As Defendant points out, "counts" are not "claims." [Dkt. No. 42 at 3 n.3.] A motion to dismiss seeks to challenge "whether the complaint includes factual allegations that state a plausible *claim* for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis added). While Plaintiffs may include their Section 15(a) and Section 15(b) claims in one count, the Court considers each claim independently.

collect their voice recordings as a mandatory part of a worker's on-boarding. [Dkt. No. 1-1 at ¶¶ 1, 3–6, 34.] Thereafter, the Defendant uses the voice recordings in conjunction with its headsets to increase its employees' efficiency. [*Id.* ¶¶ 10, 14.] Defendant then "collect[s]" and "store[s]" the recordings in a central database with the operator's name and worker identification number. [*Id.* ¶¶ 10, 18–19, 33, 47.] At this early stage and giving the Plaintiffs the benefit of all reasonable inferences in their favor, it is a reasonable inference that Defendant's possession of their voice recordings through its use of the Vocollect system implies possession sufficient to state a Section 15(a) claim.

Another court within this district found as much in a similar case.[6] *See Wordlaw v. Enter. Leasing Co. of Chi.*, 2020 WL 7490414 (N.D. Ill. Dec. 21, 2020). In *Wordlaw*, the plaintiff alleged that, as part of her employment, she was required to use a biometric scanning device that scanned her fingerprints at the beginning and end of her shift. *Id.* at *2. The defendants moved to dismiss the Section 15(a) claim on the grounds that she had not properly alleged that defendants, her employers, "possessed" her biometric information. *Id.* at *4. The Court rejected this argument, stating that "[d]efendants' collection of plaintiff's fingerprints at the beginning and end of each shift raises a reasonable (and obvious) inference that, once collected, defendants possessed the fingerprint data." *Id.* The *Wordlaw* Court noted that "[t]he

---

[6]    Defendant argues that *Wordlaw* is distinguishable because "[c]ollection can [only] imply possession . . . where the defendant is properly alleged to have directly controlled the collection and storage system." [Dkt. No. 42 at 2–3.] Defendant cites to another portion of the opinion to craft this narrow rule which the *Wordlaw* Court itself does not endorse. *Wordlaw*, 2020 WL 7490414, at *3. The Court rejects this argument.

data needed to be possessed to connect an employee to the hours worked—the purpose of the timekeeping system implies possession." *Id.* As such, defendants' argument was without merit. *Id.*

The same is true here. Plaintiffs allege that Defendant has installed and uses Vocollect software to create voice recordings for worker use with headsets and the voice recognition software. [Dkt. No. 1-1 at ¶¶ 4–5, 11–12.] Without the voiceprint collected and used in its voice recognition software, Defendant's workers would be unable to complete voice commands and accordingly, perform their job duties. Defendant's collection of Plaintiffs' voice recordings was necessary to effectuate the purpose of the Vocollect system: to execute voice commands. As such, Plaintiffs' allegations "raise[] a reasonable (and obvious) inference that, once collected, [D]efendant[] possessed the fingerprint data." *Wordlaw*, 2020 WL 7490414, at *4.

Defendant argues that an Illinois state case, *Barnett v. Apple, Incorporated*, is a more applicable comparator. [Dkt. No. 17 at 5–6; Dkt. No. 42 at 3.] The Court disagrees. In *Barnett v. Apple, Inc.*, Illinois consumers of Apple's iPhones, iPads, and Macbooks brought BIPA claims related to Apple's "FaceID" facial recognition software and "TouchID" fingerprint authentication software. 2022 WL 17881712, at *6–7. The *Barnett* Court dismissed plaintiffs' Section 15(a) claim because plaintiffs' complaint alleged that the software resides entirely on a user's device, the device's user decided whether to use the software, the collected biometrics remain stored on the device, the device's user could delete the software and data, and nothing suggested that Apple could access the biometric data. *Id.*

Here, Plaintiffs do not allege that they had access or control to their biometric information used in the Vocollect system; rather, they contend that "[a] worker who leaves the company does so without any knowledge of when his biometric identifiers will be removed from Defendant's databases—or if they will ever be." [Dkt. No. 1-1 at ¶ 42.] The devices in question did not belong to Plaintiffs and Plaintiffs allege that they were required to use the devices to work for Defendant. *See Kyles v. Hoosier Papa LLC*, 2023 WL 2711608, at *4 (N.D. Ill. Mar. 30, 2023) (distinguishing *Barnett* because plaintiff did not control, access, or delete his biometric information from defendant's internal system and defendant's requirement that plaintiff use its system as a franchisee negated any inference that plaintiff chose to use the system). The Court rejects Defendant's comparison to *Barnett*.

Of course, if discovery does not show that Defendant did in fact possess Plaintiffs' voice recordings and Honeywell was in fact the only private entity that did, Defendant may renew this argument at summary judgment. At this juncture, Plaintiffs' allegations suffice.

## B.    Plaintiffs' Section 15(b) Claim and "Active Step"

Defendant additionally argues that Plaintiff fails to allege that Defendant actively collected, used, or otherwise obtained their biometric data, as is required for a Section 15(b) violation. [Dkt. No. 17 at 6–7; Dkt. No. 42 at 4–6.] Specifically, Defendant argues that because Plaintiffs create their own voiceprint using the Vocollect system that "automatically guides technicians through the template training process," Plaintiffs have failed to allege that Defendant was an "active"

participant in the collection of biometric information.[7] [Dkt. No. 42 at 4–5.]

As noted above, Section 15(b) states that no private entity "may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" absent consent. 740 ILCS § 14/15(b).

Some courts within this district have coalesced around the understanding that this Section "requires something beyond possession," meaning "that the private entity must undertake some effort to collect or obtain biometric identifiers or information." *Jones v. Microsoft Corp.*, 2023 WL 130495, at *3 (N.D. Ill. Jan. 9, 2023). Sometimes referred to as an "active step" requirement, this concept simply details the unifying characteristics among the verbs employed in Section 15(b). *Id.*

While it is true that portions of the complaint are potentially ambiguous as to whether Defendant or Honeywell store Plaintiffs' biometric information, *see* [Dkt. No. 1-1 at ¶¶ 9, 19], accepting all the well-pled facts in Plaintiffs' complaint as true, Plaintiffs' allegations sufficiently make out a Section 15(b) claim.

Defendant is correct that Section 15(b) does not penalize simple possession of

---

[7]     Defendant also argues that because Plaintiff was employed by a staffing agency, not Defendant directly, Defendant could not have exercised enough control to take an "active step." [Dkt. No. 42 at 5.] Plaintiffs' employment by a staffing agency is immaterial. Plaintiffs make allegations against Defendant, not the staffing agency that employed them, and BIPA applies to more than just employers. 740 ILCS § 14/10 (defining "[p]rivate entity" as any individual, partnership, corporation, limited liability company, association, or other group, however organized"); 740 ILCS § 14/15 (requiring "private entit[ies]" to comply with BIPA provisions). While Defendant might lack hiring and firing authority over Plaintiffs, according to Plaintiffs' allegations that the Court must accept as true, it did have the power to enforce a requirement that Plaintiffs make voice recordings for Vocollect. *See King v. PeopleNet Corp.*, 2021 WL 5006692, at *8 (N.D. Ill. Oct. 28, 2021) (noting that plaintiff's claims against a non-employer did not doom her claims, because Section 15(b) does not only apply in the employment context).

biometric information. *Compare* 740 ILCS § 14/15(b) *with id.* § 14/15(a), (c), (d). But Plaintiffs have alleged more than mere possession; they allege that Defendant "collect[ed]" their biometric information through mandatory on-boarding and thereafter "stor[ed]" their voice recordings on their central computer or voice console. [Dkt. No. 1-1 at ¶¶ 3, 5–6, 10–19, 21–22, 35, 38.] Other courts within this district have found similar allegations sufficient. *See, e.g.*, *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 841 (N.D. Ill. 2021) (finding that plaintiff's complaint alleged that Defendant completed an "active step" under Section 15(b) by contending that defendant's system extracted biometric information and stored it on defendant's device and servers); *Smith v. Signature Sys., Inc.*, 2022 WL 595707, at *4 (N.D. Ill. Feb. 28, 2022) (finding that plaintiff's complaint alleged active steps of collection by alleging that the POS system vendor scanned and collected copies of its client's employees' fingerprints and then compared them to those stored in the database).

Even absent an "active step" requirement or allegations with that phraseology, Plaintiffs meet their burden, as they detail how Defendant collected and stored (or in the statute's verbiage, "collect[ed]" or "obtain[ed]") their biometric information or identifier. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 784 (N.D. Ill. 2020) (holding that even absent allegations that defendant "actively collect[ed]" plaintiffs' data, "[t]he complaint alleges that [the defendant] 'stored,' 'used,' and 'disclosed' [p]laintiffs' biometric data . . . and to have done those things [defendant] necessarily first had to 'obtain' the data"); *see also King v. PeopleNet Corp.*, 2021 WL 5006692, at *8 (N.D. Ill. Oct. 28, 2021) ("Even if the statute requires a showing that [defendant]

took an 'active step' towards collection of biometric information, plaintiff's claim survives that test because the complaint spells out how [defendant] obtained [plaintiff's] information.").

Plaintiffs' allegations that Defendant made collecting Plaintiffs' biometric information a condition of employment further supports this conclusion. *See Naughton v. Amazon.com, Inc.*, 2022 WL 19324, at *3 (N.D. Ill. Jan. 3, 2022) (finding that a complaint adequately alleged a Section 15(b) claim by asserting that defendant made facial scans required "as a condition of work" which showed that defendant took an "active step" in collecting plaintiff's biometric data); *see also King*, 2021 WL 5006692, at *8 (finding that a complaint adequately alleged a Section 15(b) claim by asserting that the plaintiff did not know of or consent to her employer's collection of her fingerprints during a mandatory onboarding process).

The Court disagrees that Plaintiff relies on conclusory statements of law. [Dkt. No. 42 at 4–5.] Plaintiffs have alleged sufficient facts to show a Section 15(b) violation. *See Pruitt v. Par-A-Dice Hotel Casino*, 2020 WL 5118035, at *3 (C.D. Ill. Aug. 31, 2020) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)) ("While a complaint must contain more than a general recitation of the elements for a cause of action, the complaint need not contain every single fact that would support the claim.").

### C.    "Biometric Identifier" or "Biometric Identifier" Under BIPA

Finally, Defendant argues that Plaintiffs' claims do not fall within BIPA's definition of "biometric identifier" or "biometric information" and therefore, are not

14

actionable claims. [Dkt. No. 17 at 8–11; Dkt. No. 42 at 6–10.] Specifically, Defendant argues that because the Vocollect system requires a worker using the system to "scroll through the list of available operator names" and select it, Defendant is not capable of producing of identifying an individual from their "non-identifying, speech-recognition information" or voice template created by Vocollect. [Dkt. No. 17 at 9–10; Dkt. No. 42 at 6.]

While the statute does not define "voiceprint," *see* 740 ILCS § 14/10, other courts within this district, utilizing statutory text and dictionary definitions of the term, have defined it as data unique to an individual that could be used to identify someone. *See Vance v. Int'l Bus. Machines Corp.*, 2020 WL 5530134, at *5 (N.D. Ill. Sept. 15, 2020) (quoting *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017)) (defining a voiceprint as "a set of measurements of a specified physical component," including "voice," that "can be used to identify" a person). As a logical offshoot of this definition, the information need not *actually* have been used to identify a person, only capable of doing so. *See also Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 518 n.2 (N.D. Ill. 2022) (citing *Vance*, 2020 WL 5530134, at *5).[8]

At this early stage of litigation, it is reasonable to infer that Defendant's technology analyzes workers' voices such that it has collected a BIPA voiceprint.

---

[8] While Defendant cites to *McGoveran v. Amazon Web Services, Inc.* as a potential source for a definition of voiceprint, the Court does not adopt this definition. [Dkt. No. 17 at 8.] As concluded by another court, "[t]he court in McGoveran referenced a definition of voice-printing as alleged in a complaint, and didn't adopt that definition as the rule for a voiceprint under BIPA." *See* Order Denying Motion to Dismiss, *Bell v. Petco Animal Supplies Stores, Inc.*, No. 22 C 6455, at 3 n.4 (N.D. Ill. May 11, 2023), ECF No. 23 (citing *McGoveran v. Amazon Web Services, Inc.*, 488 F. Supp. 3d 714, 716 (S.D. Ill. 2020)). The Court declined to adopt the voice imprint definition from *McGoveran*.

The Court finds instructive a recent order in a nearly identical case that Plaintiff filed as supplemental authority, [Dkt. No. 47-1]. *See* Order Denying Motion to Dismiss, *Bell v. Petco Animal Supplies Stores, Inc.*, No. 22 C 6455 (N.D. Ill. May 11, 2023), ECF No. 23. In it, the Court similarly considered defendant's argument that plaintiffs, who alleged that their employer's use of Vocollect software violated Section 15(b), had failed to allege the collection of a voiceprint because Petco, through its use of Vocollect, was not capable of identifying them. *Id.* at 3–4. The Court rejected this argument, noting that it was "reasonable to infer that the data Petco gathered from [plaintiffs] was a voiceprint" because plaintiffs alleged that Petco created the voice templates "based on the physical and behavioral characteristics of their voices," which were "capable of identifying them." *Id.* at 4. While the Court noted that "the software at issue may not have actually identified plaintiffs through the use of the voiceprints (and instead identified them through their names or an employee number)," the data itself was capable of identifying plaintiffs and therefore, was a voiceprint. *Id.*

The same is true here: it is reasonable to infer that the information that Defendant gathered was a voiceprint. Defendant contends that caselaw *Daichendt v. CVS Pharmacy, Inc.* instructs that the proper inquiry is whether the Defendant was actually capable of identifying Plaintiffs from the voice template. 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022). Defendant points to the Vocollect manual, which instructs a worker to input their worker identification number before entering voice commands, to argue that it was this information that identified Plaintiffs, not their

voice recordings. [Dkt. No. 42 at 8–9.] But the relevant inquiry is whether the data that is alleged to have been collected was itself capable of identifying Plaintiffs, not whether the software actually identified plaintiffs or how it used the data.

Much like the plaintiffs in *Bell*, Plaintiffs allege how the recordings were made, translated into data, compared to real-time audio to process instructions, and that those templates were capable of identifying them. [Dkt. No. 1-1 at ¶¶ 5–6, 8, 10–13.] As the *Petco* Court put it: "That the software at issue may not have actually identified plaintiffs through the use of the voiceprints (and instead identified them through their names or an employee number) isn't decisive. What matters is not how defendant's software actually used plaintiffs' data, but whether the data that [Defendant] gathered was capable of identifying [Plaintiffs]—whether the data amounts to a voiceprint." *See* Order Denying Motion to Dismiss, *Bell v. Petco Animal Supplies Stores, Inc.*, No. 22 C 6455, at *4 (N.D. Ill. May 11, 2023), ECF No. 23. Setting aside Plaintiffs' conclusory label of "voiceprint" in their complaint, the Court concludes that it is and that Plaintiffs' allegations regarding the voice recordings created during their employ with Defendant present facts sufficient to be plausibly protected by BIPA.

Through discovery in this case, Plaintiffs will need to prove that there is a type of technology that could identify them utilizing the data the Defendant has collected and stored. As Defendant aptly notes, mere voice-recognition software is insufficient. At this stage, however, Plaintiffs have sufficiently alleged that Defendant took a voiceprint capable of identifying them. The motion to dismiss is denied.

## V.     Motion to Strike

Defendant moves to strike Plaintiffs' class allegations or, or in the alternative, amend Plaintiffs' proposed class definition to exclude Defendant's employees who were union members or bound by an individual arbitration agreement. [Dkt. Nos. 19, 40.] "At an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); *see also* Fed. R. Civ. P. 23(d)(1)(D) (permitting the court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). "When a plaintiff's class allegations are facially and inherently deficient a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Garvey v. Am. Bankers Ins. Co. of Fla.*, 2019 WL 2076288, at *1 (N.D. Ill. May 10, 2019) (cleaned up) (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014)); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (holding that a court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination").

However, "[m]ost often it will not be 'practicable' for the court to [strike class allegations] at the pleading stage[.]" *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *see also Murdock-Alexander v. Tempsnow Emp't*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)) (noting that the Seventh Circuit has warned

that motions to strike are generally "disfavored" as plaintiffs have the burden of meeting Rule 23 but defendants generally control the information plaintiffs need to meet that burden). If "the dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *Buonomo*, 301 F.R.D. at 295 (cleaned up) (quoting *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)).

Defendant argues that Plaintiffs do not meet Rule 23, as Plaintiffs are not adequate class representatives and individual questions will predominate over common ones; specifically, Defendant points out that all Fresh Thyme employees are either unionized or have signed individual arbitration agreements with class action waivers. [Dkt. No. 19 at 5–6; Dkt. No. 40 at 4–10.] Defendant relies on various outside documents to contend that Plaintiffs and their counsel already know that all Fresh Thyme employees are unionized or bound by arbitration agreements and therefore are inappropriate class members. [Dkt. No. 19 at 1–3, 5; Dkt. No. 40 at 4–10.]

While the Court appreciates Defendant's predicament,[9] ultimately, Defendant puts the cart before the horse at this stage of litigation. Defendant's argument is reliant on its counsel's assertions in briefing, outside lawsuits, and documentation

---

[9]      Defendant cites to *Santangelo v. Comcast Corporation*, 2017 WL 6039903 (N.D. Ill. Dec. 6, 2017) as on-point authority where similar allegations were dismissed. [Dkt. No. 40 at 7.] *Santangelo* had the benefit of class discovery. *Id.* at *4; *see also Dietrich v. C.H. Robinson Worldwide, Inc.*, 2018 WL 6399199, at *1 (N.D. Ill. Dec. 6, 2018) (distinguishing *Santangelo* from the motion to strike posture of the matter before it and declining to strike "class allegations at this early stage").

outside of the pleadings.[10] [Dkt. No. 19 at 1; Dkt. No. 40 at 4–8.] It would be improper at this juncture to consider this material for the purposes of a motion to strike. *See Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (declining to consider documents outside of the pleadings, including filings in other lawsuits, on a motion to strike); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting that "[s]ometimes the issues are plain enough from *the pleadings*" to determine Rule 23 certification (emphasis added)).

Even if it was proper for the Court to do so, based on the limited filings, it would be premature to conclude that much of the class necessarily needs to be excluded. *See Jones*, 2019 WL 3554374, at *4 (quoting *DuRocher v. Nat'l Collegiate Athletic Ass'n*, 2015 WL 1505675, at *6 (S.D. Ind. Mar. 31, 2015)) (cleaned up) (noting that the Court only grants motion to strike in the "exceptional case where it is clear from the complaint that circumstances warrant a motion to strike class allegations to conserve court and party resources and where the pleadings make clear that the suit cannot satisfy Rule 23"); *see also Mednick v. Precor, Inc.*, 2014 WL 6474915, at *7 (N.D. Ill. Nov. 13, 2014) (quoting *Howard v. Renal Life Link, Inc.*, 2010 WL 4483323, at *2 (N.D. Ill. Nov. 1, 2010)) ("Whether a plaintiff has fulfilled Rule 23 class

---

[10]    Defendant provides the affidavit of Fresh Thyme Human Resources Director Lauren Cohen, but only as a part of its reply. [Dkt. No. 41.] Even if the Court were to consider outside documents on a motion to strike, the timing of Cohen's affidavit, which avers that all employees are either unionized or bound by an arbitration agreement, might deprive Plaintiffs of a meaningful opportunity to reply to the affidavit. There is no doubt, though, that Plaintiffs are fully aware of Defendant's argument on this score, namely, that all Fresh Thyme Employees were unionized or bound by an arbitration agreement. [Dkt. No. 19 at ("Again, all of Fresh Thyme's Illinois employees are subject to collective bargaining agreements and/or individual arbitration agreements with class action waivers.").

action requirements . . . is not an appropriate inquiry at the motion to dismiss stage.").

While the Court can consider the question of whether Plaintiffs have fulfilled Rule 23 requirements at this stage, it should proceed only if it is "practicable" to do so. Fed. R. Civ. P. 23(c)(1)(A). At this juncture, given the factual nature of Defendant's objections to Plaintiffs' proposed class and the lack of any discovery on these issues, the Court concludes it is not practicable. *Id.* The Court cannot accurately determine whether Plaintiffs are adequate class representatives or whether common questions predominate, as discovery is necessary to resolve these issues. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class."); *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 883 (N.D. Ill. 2014) (observing that the issue of predominance is "uniquely difficult to resolve based on the complaint alone"). As such, it is premature at this juncture to strike or even amend Plaintiffs' class allegations on their behalf. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012*)* ("Defining a class so as to avoid . . . being over-inclusive . . . is more of an art than a science . . . [and] can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.").

Specifically, it is unclear the makeup of the class itself, including how many employees are directly employed by Fresh Thyme versus outside staffing agencies, how many Fresh Thyme employees are unionized or bound by individual arbitration agreements, if and how many employees from outside staffing agencies are unionized

or bound by individual arbitration agreements, and how many members of the class remain after these analyses. *See id.* (observing that while "a class should not be certified if it apparent that it contains a great many persons who have suffered no injury at the hands of the defendant[,] . . . [t]here is no precise measure for 'a great many' " and the determination "will turn on the facts as they appear from case to case"). While union membership or individual arbitration agreements may bar some individual class members' claims, the Court cannot know how many at this stage without further discovery.[11] *Kronos*, 454 F. Supp. 3d at 791 (observing that union membership and individual arbitration agreements may bar certain claims, but the court could not know how many until discovery was conducted).

Given the potential Rule 23 issues flagged by Defendant, it is prudent to order limited discovery on these issues before allowing class-wide discovery. That way, the parties can present their arguments with the benefit of discovery on these issues without the cost of class-wide discovery. As such, the Court denies Defendant's motion to strike but orders limited discovery on the aforementioned issues.

---

[11] As a general matter, the Seventh Circuit has held that federal law preempts BIPA claims brought by certain union-represented employees against their employers. *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 904–05 (7th Cir. 2019); *Fernandez v. Kerry, Inc.*, 14 F.4th 644, 646 (7th Cir. 2021). While the law is unclear at this point, the Court is not convinced that the union membership of some of the class members, rather than the named class members, would necessarily doom Plaintiffs' suit. *See Darty v. Columbia Rehab. & Nursing Ctr., LLC*, 468 F. Supp. 3d 992, 994–96 (N.D. Ill. 2020) (holding that a BIPA claim brought by a plaintiff who was not a union member was not preempted by the LMRA because only the named plaintiff's union status was relevant to the preemption analysis); *see also Young v. Integrity Healthcare Communities, LLC*, 513 F. Supp. 3d 1043, 1048–49 (S.D. Ill. 2021) (following *Darty* to hold that that a non-union named plaintiff's suit was not preempted by the LMRA). The Court reserves judgment on this issue until it has a more fulsome picture of the class itself.

## VI.  Conclusion

For the reasons stated above, the Court denies Defendant's motion to dismiss and Defendant's motion to strike. The Court orders limited discovery on the issue of class membership, specifically focused on class members who are unionized or subject to an individual arbitration agreement. The parties are ordered to file a proposed discovery schedule on this issue by September 15, 2023.

Enter: 22-cv-6541
Date:  September 5, 2023

_____
Lindsay C. Jenkins
United States District Judge